# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTRELL DWAYNE MAESHACK, SR.,<br><br>Defendant | Case No.<br><br>2:24-mj-01008 -duty |

FILED CLERK, U.S. DISTRICT COURT 2/23/2024 CENTRAL DISTRICT OF CALIFORNIA BY: CGM DEPUTY

LODGED CLERK, U.S. DISTRICT COURT 2/23/2024 CENTRAL DISTRICT OF CALIFORNIA BY: jb DEPUTY

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date of February 22, 2024, in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in possession of firearm |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

*Complainant's signature*

Nicholas B. Stirling, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/23/24

*Judge's signature*

City and state: Los Angeles, California

Hon. A. Joel Richlin, United States Magistrate Judge
*Printed name and title*

AUSA: Jeremy K. Beecher (x5429)

## AFFIDAVIT

I, Nicholas B. Stirling, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Antrell Dwayne MAESHACK, Sr. ("MAESHACK") for a violation of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm).

2. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

### II. BACKGROUND OF AFFIANT

3. I am a Special Agent with the United States Drug Enforcement Administration ("DEA") and have been so employed since September 2019. Since August 2020, I have been assigned to the DEA's Bakersfield Resident Office in Bakersfield, California. As part of my training, I received approximately 18 weeks of training in the area of narcotics investigations at the DEA Justice Training Center in Quantico, Virginia. As a DEA Special Agent, I have been the case agent and assisted other

agents and officers in investigations involving violations of Title 21, United States Code, Section 841(a)(1), the manufacture of, distribution of and possession with intent to distribute controlled substances; and Title 21, United States Code, Section 846, conspiracy to commit the foregoing.  Specifically, those investigations have focused on the manufacture and distribution of fentanyl, marijuana, methamphetamine, heroin, and cocaine.  I am familiar with, and have participated in, conventional investigative methods, including, but not limited to, electronic surveillance, visual surveillance, wiretap investigations, questioning of witnesses, search warrants, confidential informants, and pen registers.  I have also become acquainted with the various methods used by individuals to possess, transport, and sell controlled substances in violation of federal law.  Prior to being employed by the DEA, I was a Border Patrol Agent and Emergency Medical Technician with the United States Border Patrol from 2018 to 2019, stationed in Rio Grande City, Texas.  As a part of that training, I received approximately 25 weeks of specialized federal law enforcement training at the Federal Law Enforcement Training Center in Artesia, New Mexico.  I have a Bachelor of Arts degree in Criminology from Ohio University in Athens, Ohio, with a focused study on mental illness in the criminal justice system.

### III. SUMMARY OF PROBABLE CAUSE

4.  On February 22, 2024, law enforcement executed a search warrant at the Santa Clarita residence of MAESHACK, a convicted felon, and found in his possession numerous firearms

and pieces of ammunition, including a Ruger pistol, Taurus revolver, Uzi, and Glock pistol that traveled in interstate commerce according to analysis by the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

## IV. STATEMENT OF PROBABLE CAUSE

5. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

### A. Background of Investigation

6. Kristopher Thomas ("Thomas") is a long-time member of the Main Street Mafia Crips ("MSMC") and an inmate at Kern Valley State Prison in Delano, California where he is serving a 50-year to life sentence for a gang-related, first-degree murder conviction. He has an extensive criminal history dating back to 2003, including prior convictions for controlled substance offenses in 2006 and 2016.

7. DEA's current investigation has revealed that from July 12, 2022, to December 17, 2022, while imprisoned, Thomas was the head of a drug trafficking organization that was responsible for the shipment of over 140 pounds of methamphetamine to Hawaii, Oklahoma, Alabama, New Jersey, and elsewhere, as well as the smuggling of fentanyl into Kern Valley State Prison.[1]

8. DEA agents in Hawaii initiated the investigation of Thomas based on information from a reliable confidential source

---

[1] Any and all references herein to dates and times are to approximate dates and times.

that he/she had received hundreds of pounds of methamphetamine from an individual later identified as Thomas.[2] Subsequent recorded negotiations with Thomas resulted in the seizure in Oahu, Hawaii of over 90 pounds of methamphetamine. The Hawaii transactions formed, in part, the basis for the initiation of a wiretap investigation of Thomas by DEA agents in Bakersfield within the Eastern District of California. From August 2022 to March 2023, DEA agents identified multiple contraband cell phones that Thomas used at Kern Valley State Prison and received authorization to intercept communications from three of these phones, which were assigned, at various times, six different

---

[2] The CS has previously been arrested for robbery, assault, trespassing, illegal possession of narcotics, and unlawful transportation of a firearm. The CS was convicted of assault in 2016 and a firearms violation in 2019. The CS was arrested in July 2022 for the distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1). As a result of the CS's arrest, he/she agreed to assist law enforcement, in the hopes of receiving reduced charges and/or sentencing consideration. Investigators believe the CS to be credible and reliable, in part, because the CS admitted his/her criminal conduct immediately at the time of his/her arrest, and voluntarily provided information about the location of approximately 40 pounds of methamphetamine, which was supplied by an individual who he/she believed was Broski, an individual he/she met one time briefly in Oahu and who he/she believed was the supplier. Although the supplier was actually Thomas, an inmate in a California prison, Thomas's voice, which was recorded during conversations with the CS, sounds the same, according to the CS, as well as agents who subsequently compared these recordings with federally authorized intercepts of the contraband phones that Thomas used in prison. Further, during conversations with Thomas, the CS referred to Thomas as Broski, without objection or correction. Notwithstanding the discrepancy in identities, the CS's information concerning the drug trafficking organization which supplied methamphetamine to him is deemed reliable, since the organization has the capability and has, in fact, supplied large quantities of methamphetamine to the CS, some of which has been seized by law enforcement. Based on the CS's assistance, law enforcement seized an additional 93 pounds of methamphetamine sourced from Thomas. The CS was charged federally, and his/her case is pending.

phone numbers. Those intercepts led to the seizure of an additional 54 pounds of methamphetamine destined for Oklahoma and Alabama and over half a pound of fentanyl which was smuggled into Kern Valley State Prison by Thomas's co-conspirators.

9. Recorded negotiations between Thomas and the confidential source indicate that MAESHACK was one of Thomas's drug source connections and most trusted associates. In recorded negotiations with the confidential source, MAESHACK represented that he could obtain 1,500 pounds of methamphetamine for the confidential source. MAESHACK is a known member of the MSMC and a convicted felon.

10. Based on DEA's investigation, law enforcement believes that MAESHACK resided at and still resides at a residence on Cardinal Drive, Santa Clarita, California, 91387 ("the Santa Clarita residence").

### B. Surveillance of MAESHACK at the Santa Clarita Residence

11. On October 18, 2023, DEA SA Vittoria Incandela observed MAESHACK walk out of the Santa Clarita residence, get into a Tesla SUV, and drive away to a nearby charging station. Utility records obtained pursuant to a subpoena indicate that R.C. is the account holder for the utilities at the Santa Clarita residence. Based on DEA's investigation, R.C. is the mother of MAESHACK's daughter. Historical cellular GPS location data from approximately August 10, 2022, to September 9, 2022, indicates that MAESHACK's telephone was frequently located in the area of the Santa Clarita residence.

12. On September 9, 2022, DEA Task Force Officer Sergeant Brian Kennemer observed MAESHACK inside a black Jeep parked in the driveway of the Santa Clarita residence. Additionally, a dark-colored Chrysler sedan was also observed parked at the Santa Clarita residence. DMV records indicate that the Chrysler sedan was registered to MAESHACK.

13. During the same surveillance, investigators also observed a white Honda sedan parked at the Santa Clarita residence. DMV records show that the registered owner of the Honda sedan was R.C., the mother of MAESHACK's daughter.

14. More recently, on February 12, 2024, at 12:23 p.m., DEA Task Force Officer Fabian Barrales observed MAESHACK exit the Santa Clarita residence, get into a black SUV, and depart the area.

### C. Seizure of Firearms from the Santa Clarita Residence, Pursuant to Execution of Search Warrant

15. On February 15, 2024, the Honorable Michael R. Wilner, United States Magistrate Judge for the Central District of California, authorized a federal search warrant of the Santa Clarita residence in connection with the narcotics trafficking investigation. (Case No. 2:24-mj-00863).

16. On February 22, 2024, agents of the DEA Bakersfield Resident Office, with the assistance of the DEA Fresno District Office and the DEA Los Angeles Field Division Special Response Team ("SRT"), executed the search warrant at the Santa Clarita residence.

17. At approximately 4:00 am, DEA SRT agents arrived in the area of the Santa Clarita residence and, at 4:01 a.m., knocked and announced loudly over a loudspeaker their police presence and intent to serve a search warrant.

18. A short time later, DEA SA Josh Ramirez observed MAESHACK at the upstairs window of the master bedroom at the rear the residence and commanded MAESHACK to show his hands and stay at the window. MAESHACK said he had a baby and walked away from the window. A short time later, he returned to the window holding a young child. The agents again commanded MAESHACK to stay at the window, but MAESHACK again walked away.

19. During the exchange, SA Ramirez and DEA SA James Conway also heard a woman subsequently identified as R.C. yell from the area of the same upstairs window that she was pregnant and has a baby.

20. Upon making entry, agents saw MAESHACK, R.C., and R.C.'s three daughters walking down the stairs to the ground floor. Agents ordered MAESHACK to put his hands up and walk towards police, which he did.

21. After the Santa Clarita residence was secured, at approximately 4:40 a.m., law enforcement conducted a thorough search. During the search, DEA SA Emily Kift located and seized from the Santa Clarita residence the following firearms and ammunition:

   a. One Ruger pistol, bearing serial number #304-91181, found in the kitchen in the top drawer above the oven;

b. One Taurus revolver, bearing serial number #OD52894, found in the kitchen in the top drawer above the oven;

c. Five rounds of .38 caliber ammunition, found inside the Taurus revolver;

d. One Spike's Tactical AR-15-style, semi-automatic rifle, bearing serial number #028478 and loaded with a round in the chamber, found in the closet of the master bedroom;

e. One Uzi, bearing serial number #DR004859, with a silencer, found in the closet of the master bedroom;

f. One AR-style rifle, with no visible serial number, a privately made firearm, found in the closet of the master bedroom;

g. Two high-capacity drum magazines in the master bedroom closet with the rifles;

h. Two AR-15-style rifle magazines in the master bedroom closet with the rifles;

i. One Glock, Model 42, pistol, bearing serial number #ACNA535, found in the nightstand in the master bedroom;

j. Eight pistol magazines found in the master bedroom;

k. An undetermined amount of ammunition found in the master bedroom;

l. One pistol magazine found in the living room; and

m. An undetermined amount of ammunition found in the living room.

22. The following are true and accurate photographs of the firearms and ammunition found by law enforcement during the search of the Santa Clarita residence:





23. The master bedroom closet in which the items referenced in Paragraph 21(d)-(h) were found contained only men's clothing, which appear to fit a male of MAESHACK's size and build, and men's shoes. The closet also contained automobile-related paperwork in MAESHACK's name, and mail addressed to MAESHACK (though with a different street address listed). The closet also had in it a scale with a bowl with residue consistent with the appearance of methamphetamine.

24. There was a second closet in the master bedroom which had only women's clothing and shoes. No weapons, ammunition, or drug paraphernalia was found in the closet containing only women's clothing.

25. While agents were in the process of obtaining identifying information for arrest documentation, MAESHACK stated that he is currently homeless and does not reside at the Santa Clarita residence. Upon the reading of his Miranda rights, MAESHACK declined to answer further questions and the interview was terminated.

26. Following advice and reading of her Miranda Rights, Internal Revenue Service Task Force Officer Dennis Park asked R.C. if the Santa Clarita residence was where she stayed. R.C. said it was not and that it is not her permanent address although, as noted above, utility records for the Santa Clarita residence provided in response to a subpoena listed her as the account holder. Task Force Officer Park then asked R.C. if she had a permanent address. R.C. responded that she did not.

During the interview, R.C. stated that MAESHACK stays at his mom's residence, however, R.C. was unable to provide an address or city where MAESHACK's mom resides. R.C. stated that when MAESHACK stays the night at the Santa Clarita residence, she and MAESHACK sleep on the couch downstairs or in the far northeast bedroom of the house which is also downstairs, rather than in the master bedroom that contained men's and women's clothing, guns and ammunition, and paperwork and mail addressed to MAESHACK. R.C. denied knowledge of any firearms, ammunition, or narcotics at the residence. R.C. stated both she and MAESHACK do not have working cell phones. When asked who resides in the master bedroom, R.C. stated, "Whoever lives here" and "Whoever's name is on the lease." When asked what that person's name was, R.C. stated she did not know. R.C. claimed that she and MAESHACK do not go in the master bedroom, even though they were initially encountered in the master bedroom's window when law enforcement first arrived at the Santa Clarita residence, and indicia for both R.C. and MAESHACK were found in the master bedroom.

### D. MAESHACK's Criminal History

27. MAESHACK is a known member of the MSMC and a convicted felon. On February 22, 2024, I reviewed conviction documents for MAESHACK and learned that MAESHACK has previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

    a. On or about January 4, 2006, violation of California Penal Code section 211 (robbery), in the Superior

Court for the State of California, County of Los Angeles, Case Number TA08281201, for which he received a five-year prison sentence.

  b. On or about April 13, 2011, violation of California Health & Safety Code sections 11378 and 11359 (possession of a controlled substance for sale and possession of marijuana for sale), for which he received 32- and 16-month prison sentences, respectively.

  **E.** **Interstate Nexus**

  28. According to an ATF interstate nexus expert, the Ruger, Glock, Taurus and Uzi firearms referenced above were manufactured outside of the State of California and therefore traveled in interstate or foreign commerce.

## V. CONCLUSION

  29. For all of the reasons described above, there is probable cause to believe that MAESHACK has committed a violation of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this **23rd** day of
February, 2024.

_____
THE HONORABLE A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE